UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DALE RAYMOND FISHER,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Case No. 1:19-cv-468

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.[1] If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After

---

[1] "[C]onsideration may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his [or her] consideration if they are not yet included with the petition." Advisory Committee Notes, 1976 Adoption, Rule 4, Rules Governing § 2254 Cases. In lieu of ordering the docket sheets and opinions of the Michigan appellate courts, the Court accessed them online. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search Fisher Dale, accessed September 9, 2019). The Court also accessed the docket records of the Grand Traverse Circuit Court online. *See* http://online.co.grand-traverse.mi.us/iprod/clerk/cccriminal.html (search Fisher Dale, accessed September 9, 2019). The circuit court docket sheet revealed that the transcripts of Petitioner's plea hearing and sentencing hearing were public records. In lieu of ordering them, the Court requested copies from the circuit court clerk. A copy of the plea hearing transcript is attached to this opinion as Exhibit 1; a copy of the sentencing hearing transcript is attached to this opinion as Exhibit 2.

undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I. Factual allegations

Petitioner Dale Raymond Fisher is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan. On January 13, 2017, Petitioner pleaded guilty in the Grand Traverse County Circuit Court to one count of third-degree criminal sexual conduct (CSC-III) and to his status as a fourth habitual offender. In exchange for Petitioner's plea, the prosecutor agreed to dismiss two other counts of CSC-III perpetrated upon the same victim and agreed not to pursue human trafficking charges against Petitioner relating to another victim.

Petitioner's criminal history included two 1987 convictions for second-degree criminal sexual conduct (CSC-II) in Mecosta County. He had also been convicted in Grand Traverse County of attempted first-degree retail fraud, in 1994, and first-degree retail fraud in 1996. The prosecutor listed these offenses on the information to support the habitual offender notice.

At the time Petitioner committed the retail fraud offenses, first-degree retail fraud was a felony with a two-year maximum penalty.[2] Under the statute that criminalized attempts, Mich. Comp. Laws § 750.92, the maximum penalty for attempted first-degree retail fraud at that time was one year because the statute limited the maximum to one-half of the maximum for the completed crime.[3]

---

[2] 1988 Mich. Pub. Act No. 20, § 1. The maximum penalty for first-degree retail fraud was increased to five years in 1998 Mich. Pub. Act No. 311, effective January 1, 1999.

[3] When the legislature increased the penalty for first-degree retail fraud in 1998, the maximum penalty for attempt increased as well. Mich. Comp. Laws § 750.92.

Based on the number of Petitioner's prior convictions, the prosecutor sought the habitual offender enhancement. Based on the presence of the CSC-II convictions in Petitioner's criminal history, when considered with the number of his prior convictions, Petitioner's plea to even one count of CSC-III subjected him to a minimum sentence of 25 years.

When Petitioner's counsel explained the deal to the trial court, the court noted that the significant mandatory minimum meant the prosecutor was not giving up much under the terms of the plea agreement. To ensure that Petitioner understood the consequences of his plea, the court explained that the 25-year mandatory minimum would mean he would spend at least 25 years in prison. (Grand Traverse Cty. Cir. Ct. Jan. 13, 2017, Plea Tr. 4-8.) Petitioner's counsel noted that he intended to pursue a lesser sentence anyway, but that Petitioner was not relying on that prospect. *Id*. At a minimum, despite the judge's skepticism about the benefits, the plea bargain offered Petitioner the opportunity to avoid potentially consecutive sentences on the other counts with respect to that victim or following conviction of other offenses with respect to the other victim.

Petitioner expressly acknowledged the terms of the agreement and his understanding of them. *Id*., at 7-14. He indicated that he had discussed with counsel and understood the rights he was giving up. He agreed that there were no other promises or inducements that prompted his plea and that his plea was voluntary. The prosecutor and Petitioner's counsel likewise agreed that there were no other promises. *Id*., at 14. Petitioner then admitted penetrating the 14 or 15-year-old victim's vagina with his penis in Grand Traverse County. *Id*., at 14-16. He also admitted the validity of each of the four convictions that the prosecutor included on the habitual offender notice. *Id*., at 16-18.

On February 10, 2017, during the sentencing hearing, Petitioner challenged whether all four predicate convictions for the habitual offender enhancement should be counted.

(Grand Traverse Cty. Cir. Ct. Feb. 10, 2017, Sentencing Hr'g Tr. 3-7.) He raised two distinct arguments. First, he argued that only one of the two CSC-II convictions from Mecosta County should be included because they arose from the same criminal transaction. The prosecutor and the trial court agreed. Second, he argued that his attempted first-degree retail fraud was a misdemeanor and, therefore, should not be counted. The prosecutor and the court disagreed with the second proposition.

The court recognized that attempted first-degree retail fraud was a misdemeanor,[4] but the court concluded that an attempt to commit a felony was properly counted under the habitual offender statute. *Id*. at 7-10. Based on Petitioner's prior conviction for CSC-II, prior conviction for first-degree retail fraud, prior conviction for attempted first-degree retail fraud, and present conviction for CSC-III, the court determined that Petitioner was subject to a 25-year minimum sentence under Mich. Comp. Laws § 769.12. Accordingly, the court sentenced Petitioner to 25 to 50 years imprisonment. The 25-year mandatory statutory minimum sentence coincidentally fell within Petitioner's calculated minimum guidelines range. (Grand Traverse Cty. Cir. Ct. Feb. 10, 2017, Sentencing Hr'g Tr., 22.)

Petitioner, with the assistance of appointed counsel, filed an application for leave to appeal his sentence. Petitioner argued that: (1) the court erred in counting the attempted first-degree retail fraud as a predicate offense under Mich. Comp. Laws § 769.12; (2) the court erred in scoring the offense variables; and (3) Petitioner's counsel rendered ineffective assistance in two respects—(a) counsel advised Petitioner to plead guilty because counsel could avoid the mandatory 25-year minimum; and (b) counsel did not move to strike the habitual offender

---

[4] Under Michigan's Code of Criminal Procedure, misdemeanors and felonies are principally distinguished by the duration of the potential sentence. If an offense is punishable by imprisonment for more than a year or is designated by statute as a felony, it is a felony; otherwise, it is a misdemeanor. Mich. Comp. Laws § 751.1 (f) and (n).

predicate convictions until after plea taking. (Pet'r's Appl. for Leave to Appeal, ECF No. 9-1, PageID.72.) By order entered November 15, 2017, the Michigan Court of Appeals denied leave to appeal because Petitioner's claims lacked merit. (Mich. Ct. App. Order, ECF No. 9-1, PageID.70.)

Petitioner then sought leave to appeal in the Michigan Supreme Court raising issues 1 and 3a from his Michigan Court of Appeals application and one new claim: Petitioner's counsel and the prosecutor discussed a plea deal from a previous case and charges with respect to another victim that were not pursued because of that deal. (Pet'r's Appl. for Leave to Appeal, ECF No. 9-1, PageID.105-108.) By order entered May 1, 2018, the Michigan Supreme Court denied leave to appeal because it was not persuaded the questions raised should be reviewed. (Mich. Order, ECF No. 9-1, PageID.122.)

On June 1, 2019, Petitioner timely filed his form habeas corpus petition. Petitioner also moved to stay the proceedings to permit him to return to the state courts to raise new constitutional issues. (ECF Nos. 3, 4.) Petitioner left many parts of the form habeas corpus petition blank, including that part of the form where Petitioner was supposed to identify the constitutional violations that warranted habeas relief. (Pet., ECF No. 1, PageID.6-11.) By way of Petitioner's motion to stay, however, Petitioner identified certain constitutional challenges. Specifically, Petitioner explained that he was raising an ineffective assistance of counsel claim based on counsel's advice to plead guilty despite a 25-year mandatory minimum sentence. (Mot. to Stay, ECF No. 3, PageID.24.) Additionally, Petitioner indicated his intention to raise the trial court's error regarding the habitual offender-fourth offense sentence enhancement; but, to raise it for the first time as a violation of Petitioner's due process rights. (*Id.*)

To ensure that Petitioner had identified all of his habeas issues, the Court ordered Petitioner to submit an amended petition that set forth all of the grounds for relief that Petitioner intended to raise. (ECF No. 6.) Petitioner filed his amended petition on August 20, 2019, raising three issues:

    I.    Trial counsel was ineffective in violation of Petitioner's Sixth Amendment right when he counseled Petitioner to plead guilty.

    II.    Trial court violated due process rights under the Fourteenth Amendment when erroneously enhancing Petitioner's sentence under the Habitual Offender Act.

    III.    Trial court violated Ex Post Facto and Due Process Clauses under the Fourteenth Amendment when erroneously enhancing Petitioner's sentence under Mich. Comp. Laws § 769.12.

(Am. Pet., ECF No. 7, PageID.46-49.) Petitioner also renewed his motion for a stay so that he might return to the state court and raise his due process and *ex post facto* challenges in a motion for relief from judgment. (ECF Nos. 3, 4, 8, 9.)

## II.    Unexhausted claims

Petitioner's due process and *ex post facto* challenges were not raised in the Michigan courts. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Petitioner has never fairly presented these two particular claims to the state courts at any level. Although the habeas statute prevents the Court from granting habeas relief on an

unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

## III. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the

Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### A.     Due process

Petitioner contends the trial court violated his due process rights by erroneously enhancing Petitioner's sentence under Mich. Comp. Laws § 769.12. The premise for Petitioner's contention is his conclusion that because the crime of attempt to commit first-degree retail fraud, at the time he entered his plea to that offense, was punishable by a maximum sentence of one year, it was a misdemeanor and, therefore, could not be counted as a predicate offense to support the habitual offender enhancement. That premise is entirely unfounded.

Section 769.12 of the Michigan Compiled Laws counts felonies and attempts to commit felonies. Petitioner's argument would limit "countable" attempts to commit felonies to attempt crimes that are, by themselves, felonies. That limitation does not appear in the statute, nor has the statute been interpreted to include that limitation. The trial court rejected Petitioner's argument regarding that limitation at the plea and at sentencing. The court of appeals likewise rejected Petitioner's position as meritless.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the proper interpretation of Michigan's habitual offender statutes are state-law claims

and are not cognizable in habeas corpus proceedings. *See Williams v. McLaren*, No. 17-2415, 2018 WL 3203426, at *2 (6th Cir. June 29, 2018) (court held that whether the petitioner had enough prior convictions to justify the habitual offender enhancement was a state-law question not cognizable on habeas review); *Marin v. Brewer*, No. 16-2420, 2017 WL 4677506, at *3 (6th Cir. Apr. 28, 2017) (court held that reasonable jurist could not disagree with the district court's determination that a claim based on allegedly improper characterization of the petitioner as a fourth habitual offender was not cognizable on federal habeas review).

Moreover, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. "'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Richey*, 546 U.S. at 76). Thus, this Court is bound by the state court's conclusion that Petitioner had sufficient predicate convictions to warrant his fourth habitual offender sentence enhancement.

Petitioner's due process argument depends entirely upon finding that the state courts erred in interpreting their own statute. This Court is bound by the state courts' interpretation of their own statute; therefore, Petitioner's claim necessarily fails.

### B. *Ex post facto*

Petitioner's presentation of the ex post facto argument is scant. (Am. Pet., ECF No. 7, PageID.49.) It is not clear whether he contends that the habitual offender statute has an impermissible *ex post facto* effect because (1) it relies on convictions that precede its enactment or (2) it counts as a felony a crime that was a misdemeanor when it was committed. Both contentions, however, fail.

The *Ex Post Facto* Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) "'aggravates a crime, or makes it greater than it was, when committed,'" (3) "'changes the punishment'" to inflict greater punishment than the law provided when the crime was committed, or (4) "'alters the legal rules of evidence'" so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). Although the *Ex Post Facto* Clause, by its terms, applies only to legislation, the principles apply to judicial actions through the Due Process Clause. *See Hooks v. Sheets*, 603 F.3d 316, 21 (6th Cir. 2010) (citing *Marks v. United States*, 430 U.S. 188, 191 (1977)). Moreover, because the principles of due process apply to a judicial action, the constitutionality of such action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the *Ex Post Facto* Clause. *Id.* at 458-59.

In arguing that the habitual offender statute violates the *Ex Post Facto* Clause, Petitioner is essentially claiming that his present sentence is punishment for crimes he committed years earlier. That is simply not the case. The United States Supreme Court held that the *Ex Post Facto* Clause was not violated when one of the convictions used to classify the petitioner as a fourth felony habitual offender occurred before the enactment of the Pennsylvania Habitual Criminal Act. *Gryger v. Burke*, 334 U.S. 728 (1948). The Court explained that:

> Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

*Id.* at 732.

Alternatively, to the extent Petitioner's *ex post facto* challenge is based on the change in penalty for attempt to commit first-degree retail fraud, his claim is factually unsustainable. The trial court did not count the crime of attempt to commit first-degree retail fraud as a predicate offense because it had, after its commission, changed from a misdemeanor to a felony. The court counted the offense because it was an attempt to commit a felony. Such an offense was "countable" when Petitioner committed the attempt offense.

Petitioner has failed to demonstrate that the fourth habitual offender sentence enhancement violated the *Ex Post Facto* Clause. Accordingly, he is not entitled to habeas relief.

### C. Ineffective assistance

Finally, Petitioner claims that his counsel rendered ineffective assistance during plea negotiations because counsel convinced Petitioner to plead guilty by claiming that counsel would be able to overcome the 25-year minimum sentence. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. The petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner's claim that counsel told Petitioner that counsel would be able to convince the judge to impose a sentence below the statutory mandatory minimum is a little far-fetched.[5] But, even accepting Petitioner's claim as true—and accepting that such conduct on counsel's part fell below an objective standard of reasonableness—Petitioner cannot show that

---

[5] At the plea hearing, Petitioner's counsel informed the court that counsel intended to challenge the 25-year minimum. Counsel expressly represented to the court that Petitioner was not relying on the success of that challenge in deciding to enter a plea. Petitioner did not challenge that representation.

13

there is a reasonable probability that he would not have pleaded guilty if he had known he would be saddled with a 25-year minimum sentence.

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993). In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

At Petitioner's plea hearing, the trial court repeatedly emphasized that Petitioner would be subject to a 25-year mandatory minimum sentence. (Grand Traverse County Cir. Ct.

14

January 13, 2017, Plea Hr'g Tr., pp. 4-9.) Petitioner acknowledged that he understood that a 25-year mandatory minimum sentence was a near certainty. (*Id*. at 5, 7-8.) Thus, even if counsel advised Petitioner that he could convince the court to impose a minimum sentence below the mandatory minimum, Petitioner cannot demonstrate any prejudice. The court corrected any possible misperception counsel created by counsel's advice. If Petitioner entered that hearing believing he would not be subject to a 25-year minimum sentence, the court disabused Petitioner of that belief at the hearing. Petitioner cannot, therefore, show prejudice. He knew the true state of affairs at the hearing and entered his plea anyway. The court of appeals' rejection of Petitioner's ineffective assistance claim as meritless, therefore, is neither contrary to, nor an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's motions for stay (ECF Nos. 3, 4, 8, 9) and summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

Moreover, although the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, it does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Court will enter a judgment and order consistent with this opinion.


Dated:    September 25, 2019            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE